## A02A2451. ROBINSON v. THE STATE.
(578 SE2d 235)

ADAMS, Judge.

William Robinson was tried and convicted on fifteen counts of violating the Georgia Controlled Substances Act arising out of charges that he sold drugs five times in the vicinity of a school and a public housing project. He contends that the evidence was not sufficient to support the verdict and that the trial court erred by allowing introduction of certain evidence.

1. Construed in favor of the verdict, the evidence shows that Captain Kenny Poppell of the Wayne County Sheriff's Office, who had been involved in undercover drug interdiction since 1992, received information that someone was dealing in drugs in an area known for drug activity. Poppell set up surveillance of the area with an 8 mm high-resolution videocamera, and he monitored the camera from about 9:30 a.m. until 5:30 p.m. The area was located within 1,000 feet of an elementary school and 1,000 feet of a public housing project.

Poppell testified that in the first transaction, from his hiding place approximately 25 to 30 feet away, he saw Robinson take what appeared to be marijuana out of a plastic bag and exchange it for money with a person in the front seat of a red and white truck. Pop-

pell then transmitted a description of the truck to other officers who were ready to pursue. Officer Sloan testified that he was one of the "takedown" officers waiting for Poppell's order. Based on a call from Poppell, he stopped a red truck fitting the description of the truck and passengers given by Poppell, and as he did he saw the driver throw a wad of paper out of the window that he recovered and submitted for testing along with its contents. Sloan did not find any other contraband during the search of the truck and its passengers. Deputy Sheriff Grantham testified that he was in a separate car that followed the red truck from the time that it was in sight of Captain Poppell until it was pulled over by Officer Sloan. The passengers of the truck did not talk to anyone else during that time. Both Sloan and Grantham testified about the proper handling of the recovered contraband until it was turned over to the State crime lab. A forensic chemist for the State crime lab testified that he tested the substance, which proved to be marijuana.

The next four transactions were similar. In the second, Captain Poppell saw Robinson exchange what appeared to be cocaine for money with the occupants of a gray-colored car. He gave the description of the car over his radio to the other officers. This time Sergeant Reddish assisted with the takedown of the gray car based on information received from Poppell. Reddish recovered a plastic bag with what appeared to be crack cocaine from the driver. He testified that the cocaine was marked and sent to the crime lab. A forensic chemist with the crime lab testified that the substance was cocaine.

In the third transaction, Captain Poppell testified that a man in a green shirt purchased what appeared to be crack cocaine from Robinson and placed the item in his pants pocket. This exchange was visible on the videotape. He gave the man's description to the other officers and advised them of the direction that he was walking. Sergeant Lane testified that he assisted with stopping the man described by Poppell in front of the elementary school. He searched the man and recovered what appeared to be two pieces of "rock" cocaine from his pants pocket. Lane turned the substance over to Sergeant Reddish temporarily but eventually sent the sample to the crime lab to be tested. Sergeant Reddish testified that he received the item from Lane and placed it into an evidence bag and sealed the bag before returning it to Lane. A forensic chemist from the crime lab testified that the substance proved to be cocaine.

In the fourth transaction, Captain Poppell testified that from about 50 feet away, he saw a man exchange money with Robinson for what appeared to be crack cocaine, and he again called in the description of the man and saw the other officers begin to follow in the unmarked car. This exchange was visible on the videotape. The buyer put the substance in his right, front pants pocket. Officer Sloan

testified that he arrested the buyer based on the description that Poppell gave and on the fact that an undercover car followed the buyer from where Poppell could see him to where Sloan could see him. Sloan seized a plastic bag containing a substance from the right, front pants pocket of the alleged buyer and placed it into an evidence bag and sealed it. A forensic chemist for the State crime lab testified that he tested the substance, which proved to be cocaine.

In the fifth transaction, Captain Poppell testified that a man in a white hat exchanged money for an off-white substance with Robinson. This exchange was visible on the videotape. The man put the substance into the sweatband of his hat and placed the hat back on his head. Sergeant Reddish testified that he arrested the person described by Poppell, who had been in the constant sight of officers since he left Poppell's area. A search revealed an off-white, rock-like object in the sweatband of the man's cap. Reddish placed the substance into an evidence bag and sealed it. The same item was tested by a forensic chemist and proved to be cocaine.

At about 5:15 p.m. that same day, Poppell arrested Robinson. Robinson was charged with five counts of selling a controlled substance and, for each sale, an additional count of selling within 1,000 feet of a school and within 1,000 feet of a public housing project. He was convicted on all counts.

The evidence was sufficient to support the verdict. Essentially, Robinson contends that the State did not connect the drugs found on each buyer with the alleged sales by Robinson. He argues that each person could have already had the drugs in their possession before they had contact with Robinson, and therefore, each had equal access to the drugs. He also argues that he was convicted because he was merely present at the scene.

But the video of the day's events effectively corroborated Captain Poppell's testimony. Three of the transactions and each of the vehicles involved could be seen on the tape. The evidence established that each buyer was within sight of officers from the time of the transaction through the time of the arrest. Poppell's testimony and the videotape showed that the transactions occurred and each buyer received what appeared to be either marijuana or cocaine. On each occasion, the arresting officers found the substance that Poppell thought he saw in approximately the same quantity, and in several instances they found it in the place that Poppell saw them put it. This evidence established much more than mere presence. As for equal access, Poppell saw Robinson give drugs to each of the buyers. The evidence was sufficient to support the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The videotape was played to the jury, and the jury was allowed to hear Captain Poppell's running commentary of what he

was seeing at the time of the undercover operation. The jury could also hear Poppell speak to other officers regarding each incident. Robinson did not object to introduction of the videotape itself, but when the State sought to play the tape, Robinson objected to the audio portion of the tape on the ground that it was hearsay, and he made a continuing objection on that ground. The State responded that all of the officers who would be heard on the tape were present to testify, and the trial court overruled the objection.

Even assuming the audio portion of the tape constituted inadmissible hearsay,[1] its admission does not constitute reversible error unless Robinson suffered harm. *McKenzie v. State*, 271 Ga. 47, 49 (2) (518 SE2d 404) (1999). Robinson has shown no such harm. He merely asserts that the audio portion of the tape caused his conviction. Yet he does not cite any specific statements made on the tape nor explain how any of the statements caused harm to his case. We further note that "[t]he erroneous admission of hearsay is harmless where . . . legally admissible evidence of the same fact is introduced." *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999). Our own review shows that most of the statements made by Captain Poppell on the tape are similar to his live testimony, and Poppell was subject to cross-examination on his trial testimony and the statements that he made on the tape.

Robinson also argues that the audio portion of the tape violated the continuing witness doctrine because the jury was allowed to watch the tape a second time during deliberations upon their request. But Robinson did not object to the court playing the tape a second time, and therefore any possible error is waived. See *Turner v. State*, 253 Ga. App. 760, 762 (3) (560 SE2d 539) (2002).

*Judgment affirmed. Ruffin, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 11, 2003.

*Kimberly L. Copeland*, for appellant.
*Stephen D. Kelley, District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.

---

[1] See *Woodard v. State*, 269 Ga. 317, 319 (2) (496 SE2d 896) (1998) (prior consistent statement of witness only admissible under certain circumstances). Compare *Brantley v. State*, 262 Ga. 786, 790 (5) (a), n. 4 (427 SE2d 758) (1993) (definition of res gestae includes present sense impressions).